**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DUDLEY FARRELL,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:14-1554** |
| **v.** | : | **(JUDGE MANNION)** |
| **CAROLYN W. COLVIN,[1]**<br>**Acting Commissioner of** | : | |
| **Social Security** | : | |
| **Defendant** | : | |

## MEMORANDUM

The record in this action has been reviewed pursuant to 42 U.S.C. §§405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f. Based upon the court's review of the record, the plaintiff's appeal will be denied.

## I.   PROCEDURAL HISTORY

The plaintiff, Dudley Farrell, filed an application for DIB on July 7, 2010, and an application for SSI on August 18, 2010. In his applications, the plaintiff claimed disability starting on April 18, 2010, due to chronic bronchitis, chronic obstructive pulmonary disease ("COPD"), emphysema, double hernia,

---

[1]    On February 14, 2013, Carolyn Colvin became Acting Commissioner of Social Security.

arthritis, torn left rotator cuff, numbness in hands, right arm injury, depression, bipolar disorder, and anxiety attacks. (TR. 51, 154-156, 196). Both applications were initially denied and the plaintiff requested an administrative hearing. (TR. 147-149, 169).

An Administrative Law Judge, ("ALJ"), held a hearing on December 19, 2012, and took testimony from the plaintiff and a vocational expert, ("VE"). On February 21, 2013, the ALJ issued a decision and concluded the plaintiff could perform light, unskilled work activity. (TR. 48, 51-61, 154-155). The ALJ then concluded the plaintiff was not disabled within the meaning of the Act. (Id.). The Appeals Council denied the plaintiff's request for review on June 11, 2014, (TR. 1-7), making the ALJ's decision final. See 42 U.S.C. §405(g). The plaintiff then filed the instant appeal. (Doc. 1).

At issue before the court is whether substantial evidence supports the Commissioner's decision that the plaintiff was not disabled because he was capable of performing light work activity. The plaintiff argues that he was limited to sedentary work and that based on his age and background he was disabled under Medical-Vocational Rule 201.14.

The plaintiff filed his brief in support of his appeal on November 24, 2014. (Doc. 9). The defendant filed a brief in opposition on December 23, 2014. (Doc. 10). The plaintiff did not file a reply brief.

2

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region

3

where such individual lives or in several regions of the country.
42 U.S.C. §423(d)(2)(A).

## III.   DISABILITY EVALUATION PROCESS

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act from April 18, 2010, through the date of his decision. (TR. 51-61). The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2014. At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time during the period from his alleged onset date of April 18, 2010, through the date of his decision.

4

(TR. 53). At step two, the ALJ concluded that the plaintiff's impairments of COPD, bilateral inguinal hernia, and alcohol abuse were severe within the meaning of the Regulations. (TR. 53-54). The ALJ found that plaintiff's physical impairments of bilateral carpal tunnel syndrome, mild degenerative disc disease of the lumbar spine, seizure disorder, and bilateral shoulder pain were not severe. The ALJ also found that plaintiff's mental impairments of depression, bipolar disorder, and anxiety were not severe.

At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Subpart P, Appendix 1 (20 C.F.R. §404.1520(d), §404.1525, §404.1526, §416.920(d), §416.925 and §416.926). (TR. 55). Before considering step four of the process, the ALJ determined the plaintiff's residual functional capacity, ("RFC"). In doing so, he determined that the plaintiff could perform light work activity with a sit/stand option every 30 minutes, with only occasional use of his bilateral upper extremities for overhead activities, with restrictions to never climb ladders, ropes or scaffolds, and to avoid unprotected heights and moving machinery, as well as to avoid exposure to environmental irritants, humid environments and work activity involving temperature extremes. (TR. 55).

At step four, the ALJ found that the plaintiff was unable to perform his past relevant work. (TR. 59). At step five, the ALJ determined that there were jobs that exist in significant numbers in the national economy that the plaintiff

could perform based on his age, education (high school), work experience, and RFC. (TR. 59). The ALJ therefore concluded that the plaintiff had not been under a disability, as defined in the Act, at any time from April18 2010, the alleged onset date, through the date of his decision. 20 C.F.R. §§404.1520(g) and 416.920(g). (TR. 60).

## IV.  BACKGROUND

The plaintiff was born on March 13, 1962, and was forty-eight (48) years old on the alleged onset date of disability, which is defined as a younger individual. (TR. 59). He has a high school education. (TR. 59). His past relevant work activity includes an electrician and a construction worker. (TR. 59).

The medical evidence of record establishes that, in September 2006, plaintiff had closed reduction surgery for right wrist injury with a severe comminuted displaced fracture distal radius. (TR. 295-298). In January 2007, the plaintiff's radial fracture had essentially healed and he had good mobility of his wrist despite having some discomfort and swelling. (TR. 271).

In March 2007, plaintiff fractured three ribs after a fall but he was not in any respiratory distress. (TR. 276-277). The plaintiff was examined on March 7, 2007, and his wrist fracture had healed in excellent position and filled in. The plaintiff still had discomfort when using power tools. The plaintiff had good mobility of his hand and wrist, and he had no motor or sensory

impairment or deficit. The plaintiff was allowed to return to work in two weeks. (TR. 276).

In October of 2007, plaintiff was treated for left shoulder pain and an MRI revealed a partial thickness tear of his rotator cuff. (TR. 301). Also, in October of 2007, plaintiff was treated for low back pain and an MRI of his lumbar spine revealed multilevel degenerative disc disease with levoscoliosis, L4-L5 diffuse disc bulge with superimposed right foraminal and lateral disc protrusion, *i.e.*, disc herniation, and L5-S1 diffuse disc bulge. (TR. 302-303).

The plaintiff was examined in July of 2009 by Dr. Black, and his diagnoses included COPD, lumbar disc herniations, right rotator cuff syndrome, tobacco dependence (plaintiff smoked 1 ½ packs of cigarettes per day), and a history of heavy alcohol use. (TR. 361-262).

In plaintiff's October 2, 2009 visit with his doctor, it was noted that plaintiff had a "history of chronic pain syndrome with rotator cuff tears, back and neck injuries, disc disease, major depressive disorder insomnia and anxiety." The plaintiff was assessed as having low back pain, bilateral rotator cuff injuries, chronic pain syndrome, and bilateral inguinal hernias which needed to be repaired as well as insomnia and anxiety. It was noted that plaintiff drives and operates heavy machinery despite his medication. (TR. 304).

The plaintiff also had mental impairments and he was treated in September of 2008 for about nine days with the ReDCo Group for anxiety

disorder and stayed with New Perspectives residency. The plaintiff was experiencing high levels of stress and anxiety and was having trouble since his father recently died, and since he was incarcerated for 30 days for violating a PFA regarding his wife. The plaintiff reported drinking about 12 beers daily for several years since age 32. The plaintiff was not on any "psych" medications. The plaintiff reported taking Motrin and Lortab for pain due to his herniated discs in his back and rotator cuff tears. (TR. 307-322). The plaintiff was prescribed Celex, Vistaril, and Trazadone.

The plaintiff then received follow-up treatment with ReDCo Group in February, March and April of 2009.  In April of 2009, plaintiff was reviewed by ReDCo Group and he was diagnosed with major depressive disorder "MDD", anxiety disorder "NOS", alcohol dependance in partial remission. His GAF was 54. His prescriptions for Wellbutrin and Buspar were continued and Klonopin was added. (TR. 332-334).

Subsequent to his DIB and SSI applications, SSA sent plaintiff for a consultative physical exam with Dr. Muthiah on March 26, 2011. (TR. 416-419). The plaintiff was not taking any medication at the time. The plaintiff had decreased ROM in his wrist and in his lumbar spine. The plaintiff's deep tendon reflexes were normal. The plaintiff complained of shortness of breadth, wheezing and intermittent cough, but he admitted that he smoked 10 cigarettes per day and that he smoked 2 packs per day for several years. He stated that he occasionally drank alcohol. Dr. Muthiah found that plaintiff's

8

lung had bilateral rhonchi and wheeze, and that plaintiff had minimal tenderness in his right wrist and left shoulder, paraspinal muscle spasm in the lumbar region, and minimal tremors of outstretched hands. The plaintiff was diagnosed with COPD, fracture of his right wrist with residual pain, left shoulder pain secondary to previous tendon rupture, chronic low back pain, and bilateral hernia as well as anxiety and depression. (TR.418).

On March 29, 2011, Dr. Muthiah completed a Medical Source Statement regarding plaintiff's ability to perform work-related activities. (TR. 412-413). Dr. Muthiah found that plaintiff could lift 25 pounds frequently and carry 20 pounds frequently, stand and walk for only 1-2 hours in an 8-hour day, sit without limitation, and could perform postural maneuvers, including bending, kneeling, stooping, crouching, balancing, and climbing occasionally. Dr. Muthiah also found that plaintiff had no limitations regarding reaching, handling, fingering and feeling, and that he had limitations regarding exposure to heights, moving machinery, and temperature extremes. (Id.).

In June of 2011, Dr. Muthiah conducted another consultative exam of plaintiff. (TR. 451-452). The plaintiff complained of shortness of breadth, wheezing, coughing, a history of COPD, and chronic left shoulder pain. The plaintiff admitted that he still smoked 2 packs of cigarettes per day, and occasionally drank alcohol. The plaintiff also complained of right wrist, right shoulder and low back pain. The doctor examined plaintiff's lungs and found rhonchi and wheeze. The plaintiff's muscle tone was normal and deep tendon

9

reflexes were normal. Dr. Muthiah diagnosed plaintiff with COPD, left shoulder pain, and chronic low back pain. Additionally, Dr. Muthiah completed another Medical Source Statement regarding plaintiff's ability to perform work-related activities and he found the same limitations as in his March 29, 2011 Statement, including his finding that plaintiff could only stand and walk for 1-2 hours in an 8-hour day. (TR. 412-413, 449-450).

The plaintiff's lungs were examined again in August of 2011 at the Pocono Medical Center, and he had mild wheezing, no rhonchi and no rales, and his chest x-ray was normal. The plaintiff admitted that he smoked about two packs of cigarettes per day. (TR. 455-456). Also, x-rays of plaintiff's left and right knees were within normal limits. (TR. 468-469). The plaintiff's alcohol level at the time was .357 and, he was diagnosed with syncope, most likely related to alcoholism, alcoholism, intoxication, anxiety/depression, and a history of hernia. (TR. 456).

On August 9, 2011, Dr. Katara, performed a consultative exam of plaintiff and found that his strength in his upper and lower extremities was 5/5, his reflexes were symmetrical and 1+, his coordination was intact, and that he had slight tremor with outstretched hands. The plaintiff stated that he drank 6 to 12 cans of beer per day and that he smokes two packs of cigarettes per day. (TR. 458-460). The plaintiff also had a bilateral carotid ultrasound which showed no hemodynamically significant stenosis. (TR. 474).

On November 20, 2012, plaintiff had an EMG of his upper extremities

10

which showed bilateral neuropathy consistent with bilateral carpal tunnel syndrome and "left C6 root irritation of acute in nature." The EMG also showed bilateral neuropathy across both of plaintiff's wrists. (TR. 495). The plaintiff then had an EMG on November 27, 2012, of his lower extremities which showed right S1 nerve root irritation, and a normal left lower extremity. (TR. 499).

The plaintiff was scheduled for surgery on December 26, 2012, to repair his bilateral hernia, but the surgery was cancelled. The plaintiff's doctor, Dr. Lenczewski, indicated that plaintiff had no activity restrictions and that he would reschedule the surgery. (TR. 514, 526).

The plaintiff had a consultative psychological exam in April of 2011, with Dr. Barbas. (TR. 422-425). The plaintiff reported that he was unable to work due to extreme mood swings. The plaintiff was diagnosed with adjustment disorder with depressed mood, and his GAF was 70 indicating some mild symptoms. (TR. 424). Dr. Barbas determined that the plaintiff's psychological symptoms indicated a good prognosis and that the plaintiff did not have a psychological disorder which would cause limitations on his ability to perform work-related activities on a sustained basis. (Id.). Dr. Barbas also completed a Medical Source Statement of Ability to do Work-Related Activities (mental) form and he found that plaintiff had no limitations on his ability to do work-related activities on a sustained basis, and that plaintiff could sustain attention to perform simple repetitive tasks. It was also noted that the plaintiff was able

11

to handle his own finances. (TR. 425-428).

On April 21, 2011, Dr. Barnett, a state agency psychologist, completed a mental RFC based on plaintiff's records, and he found that plaintiff's mental impairments did not prevent him from meeting the basic mental demands of competitive work on an sustained basis. (TR. 443-445).

At his December 19, 2012 hearing before the ALJ, the plaintiff, who was 50 years old, testified as to his medical conditions. The plaintiff testified that he had COPD and emphysema, that he used an Albuterol inhaler daily as well as a nebulizer (3 or 4 times per day), and that it was difficult to breathe with any type of physical exertion, to walk outside in the cold air, and to be in a room with his wife's two cats. He stated that it was difficult for him to walk down the steps to do the laundry and that he had to rest before he could walk back upstairs. The plaintiff stated that he had not smoked and did not have a drink of alcohol for over 18 months. The plaintiff stated that he suffers from depression especially since he cannot physically do things that he used to do, but he admitted that he had not seen his therapist in a couple of years. (TR. 130-135).

Plaintiff traced his inability to work back to September of 2006, when he fell from a ladder and "shattered" his right wrist, and he stated that he was out of work and in a cast for a long time. He stated that he was right-hand dominant and that his wrist slowly deteriorated such that he could not lift things or twist wires without his wrist cramping up. The plaintiff then got into

trouble for not paying a fine and he went to Pike County Prison for about six months. When he got of prison, the plaintiff felt that no one was going to hire him. The plaintiff stated that he was able to get a couple of jobs thereafter, but they did not last since he had to go "to a doctor here, a doctor there". (TR. 129).

The plaintiff stated that in addition to his inhalers and nebulizer, his medications were Seroquel, Trazodone and Loratab. He stated that his side effects were dry mouth and that his medications caused him to shake. The plaintiff stated that he could not sit for too long, *i.e.*, 15-20 minutes at most, and that he then has to stand up since his back hurts. The plaintiff stated that his favorite position was laying down which he does a good 20 times a day. The plaintiff stated that he can stand for about 20 minutes and then his back begins to hurt, and that he can walk about 100 feet. The plaintiff testified that he could lift only the equivalent of a half gallon of milk due to his hernias. He also indicated that has trouble using his hands. Thus, as a result of his impairments, the plaintiff testified that he has difficulty standing, reaching, and walking.

The plaintiff stated that he spends his days cleaning up the kitchen, and that he had two children, 16 (son) and 17 (daughter), along with his disabled wife who lived at home with him. He stated that he did the laundry, he cooks easy things but his son lifts the full pots for him, and that he could no longer take care of his lawn. Plaintiff stated that these chores took him a long time

to do and that he needed to take breaks. The plaintiff watches about 8 hours of television per day, he does not use a computer, and he only reads the mail. The plaintiff did not have any hobbies any more. The plaintiff stated that he has problems with rotator cuffs in both of his shoulders and that he had carpal tunnel in both hands. The plaintiff said he was to begin seeing a pain management specialist in January of 2013. (TR. 135-142).

The plaintiff stated that when he reaches out in front of himself, at times, his shoulder was tight and stiff, and that he had problems reaching overhead. When he tried to lift things over his head, he stated that he gets pain that shoots from his neck down into his arms. The plaintiff indicated that he experiences pain that shoots from his low back into his legs when he stands up and tries to move around. The plaintiff does not sleep through the night and he naps during the day. The plaintiff indicated that he has a pinched nerve in his neck and in his back which causes his hand to shake, causes sharp pain in his shoulders, and causes numbness in his toes. He can shower for 10 to 15 minutes but it is tough to do. (TR. 140-145).

Also testifying at the plaintiff's hearing before the ALJ was Josephine Doherty, a vocational expert, who stated in response to a hypothetical posed by the ALJ that an individual of the plaintiff's age, education, work and experience, who could perform light work activity, who had to have a sit/stand option every 30 minutes, who had to avoid unprotected heights and moving machinery, who could occasionally use his bilateral upper extremities for

14

overhead activities, who could never climb ropes, ladders and scaffolds, and who had to avoid exposure to environmental irritants, as well as humid environments and temperature extremes, and who is limited to simple routine tasks with simple instructions and simple decisions, could perform representative unskilled occupations such as a ticket taker, a mail sorter, and an information clerk, all of which existed in sufficient numbers in the national and state economies. (TR. 148-149).

Upon questioning by plaintiff's attorney, the VE stated that the plaintiff does not have any transferable skills to a sedentary RFC. Also, the VE stated that if plaintiff could only occasionally handle and grasp objects bilaterally and only occasionally reach forward, he could not perform the ticket taker and mail sorter positions, and the information clerk position would remain but the amount of available positions would be reduced by one-half. Also, if plaintiff had the sit/stand flexibility along with the other stated limitations, the VE stated that he could perform the light duty work of furniture rental clerk (which requires basic computer use) as well as the information clerk. (TR. 150-151).

## V.    DISCUSSION

On appeal, the plaintiff argues that the record shows that he was limited to, at most, sedentary duty work as opposed to light work which the  ALJ found he could perform. Sedentary jobs are when "walking and standing are

required occasionally and other sedentary criteria are met." 20 C.F.R.

§404.1567(a). Sedentary work "involves  lifting no more than 10 pounds at a

time and occasionally lifting or carrying articles like docket files, ledgers, and

small tools." *Id*. "Light work involves lifting no more than 20 pounds at a time

with frequent lifting or carrying of objects weighing up to 10 pounds." 20

C.F.R. § 404.1567(b). Also, a job is considered light work "when it requires a

good deal of walking or standing, or when it involves sitting most of the time

with some pushing and pulling of arm or leg controls." *Id.*

The plaintiff contends that  Medical-Vocational Rule 201.14 would have

required a finding that he was disabled if the ALJ properly found him to be

capable of only performing sedentary work. (Doc. 9, at 7). "The Commissioner

can rely on the Medical–Vocational Rules 'to determine issues that do not

require case-by-case consideration.'" Oberley v. Colvin, 2014 WL 2457398,

*11 n. 15 (W.D.Pa. May 30, 2014) (citing Heckler v. Campbell, 461 U.S. 458,

467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)). In *Campbell*,  461 U.S. at 467,

the Supreme Court held that under the Act, disability decisions are to be

"individualized determinations based on evidence adduced at a hearing."

(citations omitted). However, the Supreme Court found that "the agency may

rely on its rulemaking authority [such as the medical-vocational guidelines] to

determine issues that do not require case-by-case consideration." *Id*.

(citations omitted).

The plaintiff points to the opinion of Dr. Muthiah who found that he had

16

the RFC to perform only sedentary work. The plaintiff argues that the ALJ erred by not giving controlling weight to Dr. Muthiah's opinion. (Doc. 9, at 9-11). As discussed above, Dr. Muthiah was a consultative examiner who examined plaintiff on two occasions, March and June of 2011, and he found on two occasions that while plaintiff had the ability to lift and carry weight consistent with light work, plaintiff could only stand and walk for 1-2 hours in an 8-hour day which was consistent with sedentary work. Thus, plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence and that the ALJ should have found that he could only perform sedentary work. As such, plaintiff maintains that based on his age, work experience and background, he should be considered disabled under Medical-Vocational Rule 201.14.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96–8p, 61 Fed.Reg. 34475. A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id.;* 20 C.F.R. §404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In determining a plaintiff's RFC, the ALJ must consider all relevant

evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. §404.1545(a). As the defendant recognizes, (Doc. 10, at 21-22), the responsibility for determining a plaintiff's residual functional capacity at the hearing level is reserved for the ALJ. 20 C.F.R. §404.1546. The final responsibility for determining the RFC is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §404.1527(e)(2), (3).

The plaintiff states that Dr. Muthiah actually examined him and reviewed his medical tests, and that "Dr. Muthiah's opinion is the only opinion evidence concerning [his] physical condition and it supports the conclusion that [he] is limited to sedentary work." (Id., at 9). Also, the plaintiff maintains that his complaints of pain in his low back which radiates into his legs as well as his MRI which "documented multilevel degenerative changes to the lumbar spine with disc herniation at L4-5" and his EMG documenting "nerve root irritation" substantiate Dr. Muthiah's physical examination of him finding deceased ROM in his lumbar spine and paraspinal muscles spasms."
(Id., at 10). (TR. 303). The plaintiff concludes that Dr. Muthiah's opinion was "essentially uncontradicted" and, that Dr. Muthiah's opinion should have been accepted by the ALJ which would have lead to a finding that he was "disabled pursuant to Medical-Vocational Rule 201.14 based on his age, education and past work experience." (Id., at 10 and 13).

The defendant counters that the ALJ was not required to accept the

18

opinions of Dr. Muthiah who only examined the plaintiff as a consultant two times, and that the ALJ considered the evidence as a whole, including the fact that "no treating physician opined that [plaintiff] had functional limitations that would preclude him from working." (Doc. 10, at 22-23). The defendant points out the ALJ correctly indicated that "Dr. Lenczewski specifically stated, as recently as December 2012, that [plaintiff] had no activity restrictions." (Id., at 23. TR. 57, 526). The defendant also correctly notes that Dr. Muthiah found that plaintiff had no limitations regarding his ability to reach, handle and finger objects, and feel. (Id., at 24 n. 11). The defendant further points to the undisputed fact that the plaintiff did some work after his alleged disability onset date in April 2010, including work as a carpenter, electrician and plumber, and had earnings in 2010 and 2011 despite not amounting to substantial gainful activity. (Id., at 23). (TR. 53, 203, 209, 127-128). In fact, plaintiff testified that during this time when he was self-employed, he worked doing sheetrock repairs and during this time he was "swinging from rafters and banging nails, ..., humping lumber." (TR. 127-128). Thus, the defendant states that "[t]he fact [plaintiff] could perform this work lends support to the ALJ's decision that Dr. Muthiah's opinion was entitled to 'some' but certainly not controlling weight." (Doc. 10, at 23).

The court finds that the entire record, including the objective medical evidence and plaintiffs own testimony, as detailed above, shows that the ALJ did not err in finding that the plaintiff could perform light work with limitations

19

during the relevant time, and that substantial evidence supports the ALJ's assignment of only some weight to Dr. Muthiah's opinion.

The court also finds that the ALJ's RFC assessment is supported by substantial evidence since included limitations related to the plaintiff's low back pain, wrist pain, bilateral shoulder pain, and to plaintiff's COPD and emphysema that are established by the evidence. As mentioned, the ALJ included in the plaintiff's RFC a sit/stand option every 30 minutes, with only occasional use of his bilateral upper extremities for overhead activities, with restrictions to never climb ladders, ropes or scaffolds, and to avoid unprotected heights and moving machinery, as well as to avoid exposure to environmental irritants, humid environments and work activity involving temperature extremes. (TR. 55). Moreover, even Dr. Muthiah found that plaintiff could lift 25 pounds and could carry 20 pounds despite his torn rotator cuffs in his shoulders, and that plaintiff only had a slightly reduced range of motion in his shoulders, right wrist, knees and spine. (Tr. 58).

In addition to deficiencies in the RFC assessment, the plaintiff indicates that the ALJ erred in assessing his credibility, including his complaints of pain in his lumbar spine and difficulty with both of his shoulders as well as residual pain in his wrist and tremors in his hands, since his "complaints were all supported by the objective evidence." (Doc. 9, at 10).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged

20

with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, 2000 WL 288246 (E.D. Pa. March 7, 2000).

When considering a plaintiff's subjective complaints of pain, the ALJ must engage in a two-step analysis. First, the ALJ must determine if the alleged disabling pain could reasonably result from the medically determinable impairment; and second, the ALJ must consider the intensity and persistence of the claimant's disabling pain, and the extent to which it affects his ability to work. *See* Diaz v. Commissioner of Social Security, 39 Fed. App'x 713, 714 (3d Cir. June 12, 2002).

"[A]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985). Where in fact "medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067–68 (citing Carter v. Railroad Retirement Bd., 834 F.2d 62, 65 (3d Cir.1987); Ferguson, 765 F.2d at 37).

Here, after reviewing the medical evidence of record, the ALJ

21

determined that the plaintiff's subjective complaints were not entirely credible. (TR. 57). In part, the ALJ relied upon the plaintiff's medical records and objective medical tests, discussed above, as well as the plaintiff's daily activities. Additionally, the ALJ noted that notwithstanding his assertions of disabling pain, the plaintiff's treatment notes "reveal that there are scant prescriptions for any pain medications." (TR. 58). The ALJ also pointed out that while plaintiff testified he had pain from his inguinal hernias, his surgery scheduled on December 26, 2012, was cancelled and plaintiff was to reschedule it. Regardless, the ALJ correctly indicated that Dr. Lenczewski did not impose any activity restrictions on plaintiff regarding his hernias. (TR. 58-59).  Further, the ALJ concluded that "[t]he conservative nature of [plaintiff's] medical care, the limited objective medical findings, and the [plaintiff's] admitted activities all significantly diminished his credibility regarding the frequency and severity of his symptoms and the extent of his functional limitations." (TR. 59). The court finds that substantial evidence supports the ALJ's finding regarding the plaintiff's testimony and his complaints of pain.

In light of all of the above, the court finds that the ALJ's RFC assessment and credibility determinations are supported by substantial evidence. On this basis, the plaintiff's appeal will be denied and the decision of the ALJ affirmed.


## VI.    CONCLUSION

For the reasons stated above, the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. 1), will be **DENIED**; the decision of the Commissioner will be **AFFIRMED**. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 5, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-1554-01.wpd